**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
---------------------------------------------------------------
MOSES FLORES SR.,

                         Plaintiff,                         **FIRST AMENDED COMPLAINT**

          -against-                               **JURY TRIAL DEMANDED**
                                                  **15-CV-5845 (JGK)**

THE CITY OF NEW YORK, a municipal entity;
THE NEW YORK CITY POLICE DEPARTMENT,
NEW YORK CITY POLICE COMMISSIONER
WILLIAM BRATTON, Commissioner of the NEW
YORK CITY POLICE DEPARTMENT;
SUPERVISORY OFFICERS SALLY ROES; POLICE
OFFICER NELSON DE LA ROSA, Shield No. 06208;
POLICE OFFICER WILFREDO BENITEZ, Shield
No. 15506; POLICE OFFICER MARIA BRITO
Shield No. 01024; NEW YORK CITY POLICE
OFFICERS "JOHN DOES"

                             Defendants
---------------------------------------------------------------

 Plaintiff Moses Flores Sr., by his attorney Poupa Jenny Marashi, Esq., for his complaint, alleges

as follows:

<u>**NATURE OF THE ACTION**</u>

1.  This is an action against the Defendant parties, for the violation of the Plaintiff's federally

guaranteed constitutional and civil rights, secured by the Civil Rights Act of 1871, 42 U.S.C. §

1983, the First, Fourth, and Fourteenth Amendments, to the United States Constitution, and the

violation of the American with Disabilities Act (42 U.S.C. §12131 *et seq*.) (The "ADA"), and

Section 504 of the Rehabilitation Act of 1973 (29 U.S.C. § 794) (the "Rehabilitation Act").

2.  This case arises out of the excessive use of force by Defendant Officers on Plaintiff, Mr.

Moses Flores Sr., who is is legally disabled due to a mental condition.

3.  The New York Police Department (NYPD) refers to such individuals interchangeably as

either "mentally ill" or "Emotionally Disturbed Person" ("EDP").

2.  Many of Defendants interactions with Plaintiff (not the use of excessive force which was not

expressly permitted) are dictated by "NYPD Patrol Guide Policy 216-05: Mentally Ill or

Emotionally Disturbed Persons" ("Policy 216-05"), which essentially allows the NYPD to take

into custody anyone it deems mentally ill/EDP. Such gross discrimination is permitted either

because Policy 216-05 necessarily prescribes such action and is unconstitutional/discriminatory

on its face.  It states in relevant part "If the EDP is unarmed, not violent, and willing to leave

voluntarily, uniformed member of the service may take such person into custody." Alternately,

Policy 216-05 is unconstitutional and discriminatory because it permits a practice/custom

interpreting it to permit officers to take into custody an individual just for being mentally ill.

Often, as with Plaintiff, it leads to the unconstitutional use of force to get them into such custody.

3.  When policies such as Policy 216-05 permit such escalating actions that do not in any way

accommodate a disabled individual, such as Mr. Flores, once the person is taken into custody,

there is a the custom and practice of enforcing such policy by charging individuals with

Obstruction of Governmental Administration, Resisting Arrest, or Disorderly Conduct to justify

instances of excessive force. Mr. Flores was charged with each of these, in order to justify the

actions of Defendant Officers.

4.  The NYPD's widespread constitutional abuse and discriminatory treatment of the mentally

disabled has flourished as a result of and are directly and proximately caused by policies such a

Policy 216-05, either on its face, or as it is applied, customarily or otherwise, and enforced.  The

City and Bratton have acted with deliberate indifference to the constitutional rights of those

mentally disabled consumers who come into contact with the NYPD by (a) failing to properly

screen, train and supervise NYPD Officers (either by such unconstitutional policy, or as it is

applied) in reasonably accommodating the mentally disabled, (b) inadequately monitoring

NYPD Officers and their interactions with mentally ill, (c) failing to sufficiently discipline

NYPD officers who engage in constitutional abuses.

5.  Plaintiff brings this action to vindicate, not only his rights, but the rights of all disabled New

York City residents, including but not limited to mentally disabled residents, to be free from

unconstitutional policies of Defendant City that do not properly address the needs of the disabled

individuals who are not committing a crime, not violent, and not a threat to themselves or others,

but, who through the unconstitutional policy itself, escalate to incidents of excessive force, and

3

charges of Obstructing Governmental Administration, Resisting Arrest, or Disorderly Conduct by NYPD officer Defendants.

6.  Plaintiff seeks injunctive and declaratory relief from policies, specifically such as Policy 216-05, practices, and/or customs described herein that violate the First, Fourth, and Fourteenth Amendment and the ADA and Section 504, and an injunction enjoining defendants from continuing Policies like Policy 216-05, practices, and customs.  In addition, Mr. Flores seeks damages, both compensatory and punitive, and an award of costs and attorneys' fees, and such other and further relief as this court deems equitable and just.

## JURISDICTION

7.  This action arises under the laws of the United States, including the American with Disabilities Act ("ADA"), Section 504 of the Rehabilitation Act of 1973 ("The Rehabilitation Act"), as well as Pursuant to 28 U.S.C. §§ 1331 and 1343.

8.  The court has jurisdiction over plaintiff's claims for declaratory and injunctive relief as authorized by 28 U.S.C. §§ 2201 and 2202 and Rule 57 of the Federal Rules of Civil Procedure.

## VENUE

9.  Pursuant to 28 U.S.C. § 1391(b)(c)venue is proper as the acts complained of occurred in the State of New York, County of Bronx.

## PARTIES

4

10.  Plaintiff Moses Flores Sr. was at all times relevant herein a resident of the State of New York, Bronx County, and visits neighborhoods where unconstitutional and discriminatory conduct against mentally disabled individuals is a part of NYPD policy.

11.  Defendant City of New York is a municipal entity which was created under the authority of the laws of the Constitution of the State of New York and which is authorized with, among other powers, the power to maintain a police department for the purpose of protecting the welfare of those who reside in New York City.  It is a local government entity within the meaning of Title II of the ADA, and received federal funding within the meaning of the Rehabilitation Act.

12.  Defendant New York Police Department is a public entity within the meaning of Title II of the ADA, and on information and belief receives federal funding within the meaning of the Rehabilitation Act. The City provides funding to and oversight of Defendant NYPD.

13.  Defendant New York City Police Commissioner William Bratton is and was at all times relevant herein, the Police Commissioner for the City, and is and is and was responsible and chief architect of the policies, practices, and/or customs of the NYPD, a municipal agency of the City.  He is and was, at all rimes, responsible for the hiring, screening, training, retention, supervision, discipline, counseling, and control of the police officers under his command who are and were employed by the NYPD including the Defendants names herein. He is sued individually and in his official capacity.

14. Defendants Sally Roes are and were at all times relevant herein duly appointed and acting supervisory officers, servants, employees and agents of The City of New York and/or the New York City Police Department, responsible for the training, retention, supervision, discipline and control of subordinate members of the police department under their command. Defendants are and were at all times relevant herein acting under color of state law in the course and scope of their duties and functions as supervisory officers, agents, servants, and employees of defendant The City of New York, were acting for, and on behalf of, and with the power and authority vested in them by The City of New York and the New York City Police Department, and were otherwise performing and engaging in conduct incidental to the performance of their lawful functions in the course of their duties. Defendants Sally Roes are sued individually and in their official capacity.

15. Police Officer Nelson De La Rosa, Shield No. 06208;  Police Officer Benitez Wilfredo, Shield number 15506, Police Officer Maria Brito Shield Number 01024 and John Does, are and were at all times relevant herein duly appointed and acting officers, servants, employees and agents of The City of New York and/or the New York City Police Department (NYPD), a municipal agency of defendant The City of New York.  Defendants are and were at all times relevant herein acting under color of state law in the course and scope of their duties and functions as officers, agents, servants, and employees of defendant The City of New York, were acting for, and on behalf of, and with the power and authority vested in them by The City of New York and the New York City Police Department, and were otherwise performing and engaging in

6

conduct incidental to the performance of their lawful functions in the course of their duties.

Police Officer Nelson De La Rosa, Shield No. 06208;  Police Officer Benitez Wilfredo, Shield

number 15506; Police Officer Maria Brito Shield Number 01024; and John Does, are sued

individually and in their official capacity.


**STATEMENT OF FACTS**

16.  The Plaintiff is Moses Flores, Sr..

17.  The Plaintiff is 42 years of age.

18.  The Plaintiff resides with with his elderly mother in the City of New York, the County of the

Bronx, the State of New York.

19.  The Plaintiff's was born December of 1973.

20.  The Plaintiff is completely blind in his right eye.

21.  The Plaintiff, by nature, is a gentle and calm vegetarian who wants nothing more than to do

good and help others.

22.  The Plaintiff has been medically diagnosed with a variety of non-violent, yet anxiety and

stressed induced mental illnesses.

23.  The Plaintiff has been prescribed drugs for treatment of such diagnosis, which he sometimes takes and sometimes does not take, as their side-effects can be even more debilitating than the disability itself.

24.  The Plaintiff has been legally found to be "disabled due to a mental condition" by Social Security Disability.

25. At about 9:30 pm on July 26, 2012, Plaintiff went to the local movie theater with his sister, Damaris Sanchez and his sister's friend, Batan Nitolin to watch the film Dark Knight Rises.

26.  Plaintiff and his sister and her friend all purchased tickets to the theater, gaining lawful access to the theater, and permission to view the film.

27.  Plaintiff was in good spirits and seated toward the back of the theater.

28.  During the action film, as is common at this particular theater, Plaintiff started to cheer, "Get him, Batman."

29.  Plaintiff suddenly felt an aggressive tap, by who he believed at the time to be a movie theater employee, but now upon information and belief, is believed to be Police Officer Nelson De La Rosa.

30.  In sum or substance, Officer De La Rosa ordered Plaintiff to "Tone it down and sit down!"

31.  Plaintiff complied with Defendant's command, and responded, "Ok, but is it necessary for you to touch me like that?" At which point, it is believed that Defendant Officer De La Rosa replied, "Like this?" and repeated the aggressive tap.

32.  At this point, Moses Flores' friend, Batan Nitolan, who is a veteran, showed Officer De La Rosa his identification, and told Officer De La Rosa, in sum or substance that Plaintiff is mentally ill, has been diagnosed with a variety of mental illness, and to please handle the situation in light of such information. That it would help to give Plaintiff space and not crowd him, or take any threatening actions against Plaintiff.

33.  Moses Flores' sister, Ms. Sanchez, also told Defendant Officer De La Rosa that Mr. Moses Flores Sr., is mentally ill/emotionally disturbed, and is actually diagnosed with manic depression/ bi-polar, PTSD, is on medications, which he may or may not have taken that day as a result of mentioned disability.  She requested Officer De La Rosa to please de-escalate the situation and/or maintain calm and patience, and not crowd around Plaintiff, due both to the fact he is bi-polar, and that he is blind in his right eye, and that they would immediately and willingly leave the movie that that had paid to see.

34.  Even though Moses Flores, his sister, and friend had each paid for a movie ticket, that they were legally permitted to watch, even though, each had committed no crime or offense, finally, even though they were not even asked by Officer De La Rosa to leave, they voluntarily and by their own initiative and volition, proceeded to leave in order to avoid a further escalation of

9

aggression, as it was obvious that no consideration was being made to Mr. Flores mental

disability that causes him to be excitable and unable to "read" certain emotional cues.

35.  Officer De la Rosa and his partner Officer Brito took no action to de-escalate the situation,

even though they knew Plaintiff had a disability. In fact, officers continued to stand over Mr.

Flores following Plaintiff as he was willingly walking out of the theater.

36.  The criminal complaint sworn to by arresting officer Defendant De La Rosa states that as

Plaintiff was leaving the movie theater, Plaintiff threatened to fight Officer De La Rosa. Plaintiff

maintains that he had never threatened to fight Officer De La Rosa, or any other Officer. Plaintiff

does admit that he talked back to and made statements questioning Officer De La Rosa and

Brito's aggressive behavior towards him.

37.  Although Officer De La Rosa and Brito knew they were dealing with a mentally disabled

individual, who was not armed, who had no warrant, and who was walking away from Officers

and out of the theater, Officer De La Rosa and Brito, for no reasonable purpose continued to

follow Plaintiff, and it is believed,  activated the NYPD Emergency Service Unit, which is upon

information and belief, trained in military style specialized situations.

38.  Not only were no accommodations made for Plaintiff, but as he was on his own volition

leaving the theater, he was met by what is thought to be more than fifteen officers, who were

waiting for Mr. Moses Flores to exit the theater.  It is believed that the officers may have been

10

NYPD's Emergency Service Unit.  Upon information and belief, Policy 216-05 mandates such action, or is customarily called upon when NYPD officers are interacting with EDPs.

39. Batan Nitolan and Damaris Sanchez immediately pleaded to the many Defendant Officers Does and Roes who met them outside, that as a result of his diagnosis, and as is common, Plaintiff sometimes becomes excitable. Ms. Sanchez and Mr. Nitolan respectfully requested that Defendant Officers maintain calm and patience, and reiterated that to avoid any disturbance, they willingly left the movie that that had paid to see, and that Mr. Flores had not done anything wrong.

40.  The officers maintained a threatening stance towards Mr. Flores.

41.  Ms. Sanchez shouted to the Officers that her brother is mentally ill, that he suffers from panic disorders, anxiety, and that he should be approached in a peaceful, quiet, and calm manner, that he needs special accommodations, not to threaten him with physical violence or crowd around him.

42.  Defendant Officers refused to use peaceful mechanisms to approach Plaintiff, and instead isolated Mr. Flores from his private sources of aid, and began to beat him, for no apparent reason other than being mentally disabled.

43.  Mr. Flores was unarmed. He was not a threat to anyone. He had no outstanding warrants. He was not committing any violation or crime.  He was exiting a movie theater where he had, as is custom in that particular theater, talked back to the screen.

44.  Ms. Sanchez watched, afraid officers were killing her brother, as many of them jumped on Mr. Flores and smashed his head and stepped on his neck.  Mr. Flores did not touch any of the officers, or attempt to harm any of the officers. His sister was crying and again pleading that they stop.

45.  Not only was she ignored, but she was yelled at, shoved, beaten, and falsely arrested on charges of assaulting a police officer (The Bronx District Attorney's Office declined to prosecute Ms. Sanchez).

46.  Mr. Flores was taken to the 44th Precinct. His was handcuffed in the cell, and had his feet tied.

47.  Mr. Flores was taken to Lincoln Hospital where he was treated for cuts and abrasions, especially around the area on his neck, and a 1.5 inch laceration to the head.

48.  According to hospital records, The NYPD Officer accompanying Plaintiff told hospital doctors that Plaintiff had received the cuts by banging his head in the precinct jail cell, while Mr. Flores maintained they were the result of the beating by the Officers outside of the theater.

49.  Mr. Flores was next processed and taken to Bronx Criminal Court, and arraigned/ ROR'd, charged with Obstructing Governmental Administration, Resisting Arrest, Attempt to Commit a Crime, Menacing, Disorderly Conduct, and Harassment.

50.  Mr. Flores pled guilty to disorderly conduct on June 26, 2014.

51.  NYPD Defendant Officers discriminated against Mr. Flores when they learned his mental diagnosis, failed to accommodate Mr. Flores in any way, antagonized him, wrongfully perceived his reaction as the crime of disorderly conduct, and proceeded to beat him and, it is believed, they falsified reports to indicate otherwise.

**FIRST CLAIM**

**DEPRIVATION OF RIGHTS UNDER THE
UNITED STATES CONSTITUTION AND 42 U.S.C. §1983**

52.  Plaintiff incorporates by reference each and every allegation contained in the foregoing paragraphs.

53.  By their conduct and actions in using excessive and undue force against plaintiff, violating rights to equal protection of plaintiff, violating rights to due process of plaintiff, violating and retaliating for plaintiff's exercise of his rights to free speech and assembly, failing to intercede on behalf of the plaintiff and in failing to protect the plaintiff from the unjustified and unconstitutional treatment he received at the hands of other defendants, defendants De La Rosa

and Benitiz, Brito DOES and/or ROES, acting under color of law and without lawful

justification, intentionally, maliciously, and with a deliberate indifference to or a reckless

disregard for the natural and probable consequences of their acts, caused injury and damage in

violation of plaintiff's constitutional rights as guaranteed under 42 U.S.C. §1983 and the United

States Constitution, including its First, Fourth, and Fourteenth amendments.

54.     As a result of the foregoing, plaintiff was deprived of his liberty and property,

experienced pain and suffering, garden variety emotional injury, costs and expenses, and was

otherwise damaged and injured.

## SECOND CLAIM

### DEPRIVATION OF RIGHTS UNDER THE
### UNITED STATES CONSTITUTION AND 42 U.S.C. §1983

55.  Plaintiff incorporates by reference each and every allegation contained in the foregoing

paragraphs.

56.  By their conduct in failing to remedy the wrongs committed by their subordinates and in

failing to properly train, supervise, or discipline their subordinates, supervisory defendants Sally

Roes caused damage and injury in violation of plaintiffs' rights guaranteed under 42 U.S.C.

§1983 and the United States Constitution, including its First, Fourth, and Fourteenth

amendments.

57.  As a result of the foregoing, plaintiff was deprived of his liberty and property, experienced

pain and suffering, garden variety emotional injury, costs and expenses, and was otherwise

damaged and injured.

## **THIRD CLAIM**

## **VIOLATION OF  TITLE II of the**
## **AMERICANS WITH DISABILITIES ACT (42 U.S.C. § 12131 et seq.)**

58.  Plaintiff incorporates by reference each and every allegation contained in the foregoing

paragraphs.

59.  Congress enacted the ADA upon finding, among other things, that "society has tended to

isolate and segregate individuals with disabilities" and that such forms for discrimination

continue to be "serious and pervasive social problem." 42 U.S.C. § 12101(a)(2). The mentally ill

are being segregated and isolated in jails and prisons for the crime of being mentally ill.

57.  In response to these findings, Congress explicitly stated that the purpose of the ADA is to

provide "a clear and comprehensive national mandate for the elimination of discrimination

against individuals with disabilities" and "clear, strong, consistent, enforceable standards

addressing discrimination against individuals with disabilities." 42 U.S.C. § 12101(b)(l) (2).

58.  Title II of the ADA provides in pertinent part: "[N]o qualified individual with a disability

shall, by reason of such disability, ...be subjected to discrimination by any such entity." 42 U.S.C.

§ 12132.  A person who is not a harm to others and themselves, cannot be arrested discriminated

against because society fears them for no good reason.

15

59.  At all times relevant to this action, Defendants were public entities within the meaning of Title II of the ADA and provided a program, service, or activity to the general public.

60.  At all times relevant to this action, Plaintiff was a qualified individual with a disability within the meaning of Title II of the ADA and met the essential eligibility requirements for the receipt of the services, programs, or activities of Defendants.

61.  Through the acts and omissions of Defendants and their agents and employees described herein, Defendants have subjected Plaintiffs to discrimination on the basis of disability in violation of Title II of the ADA by failing to provide him communication and space that is as effective as communication provided to the general public during the course of law enforcement interactions, and by wrongfully thinking his mental illness, specifically the symptoms of his mental disability, a crime.  Plaintiff was not reasonably accommodated from the time Officer De La Rosa was repeatedly told he has a variety of mental disabilities from the initial encounter, arrest; transportation; booking; and/or while otherwise in defendants custody.

62. Plaintiff is informed, believes, and thereon alleges that defendants and their agents and employees could have reasonably provided him with one or more of the following aids and services in order to effectively communicate with him:

a.   Officers did not need to crowd around Plaintiff, when specifically asked to please move away, when Plaintiff was not threatening or being a danger to anyone or to himself.  They could have maintained a safe and non threatening distance,

b.   Officer De La Rosa did not need to call in an ESU team who started to repeatedly beat Plaintiff,

c.   Officers could have defused the situations using the myriad of tactics both based on common sense or in their training about defusing situations,

63. Plaintiff is informed, believes, and thereon alleges that defendants and their agents and employees have failed and continue to fail to:

a.   Adopt and enforce additional procedures and services to  communicate effectively with individuals who mentally ill by creating a policy that would require Officers to call onto the scene a Crisis Intervention Team, that many other Police Departments have, where specially trained officers who know how to defuse and properly accommodate mentally ill persons so as to limit harm to themselves, the public and other officers, are called in to accommodate such individuals.

b.   Train and supervise NYPD officers and employees to communicate effectively with individuals who are mentally ill; and

17

    c.    Train and supervise NYPD officers regarding the culture of persons who are mentally ill, and the behaviors of those who are mentally ill.

64.  Because defendants' discriminatory conduct is ongoing, declaratory and injunctive relief are appropriate remedies.

65. Plaintiffs pray for judgment as set forth below.

## FOURTH CLAIM

### VIOLATION OF SECTION 504 of the REHABILITATION ACT of 1973 (29 U.S.C. § 794)

66. Plaintiffs incorporate by reference each and every allegation contained in the foregoing paragraphs.

67. Section 504 of the Rehabilitation Act of 1973 provides in pertinent part: "[N]o otherwise qualified individual with a disability. . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits, or be subjected to discrimination under any program or activity receiving federal financial assistance . . ." 29 U.S.C. § 794.

68. Plaintiff was at all times relevant herein a qualified individual with disabilities within the meaning of the Rehabilitation Act because he has mental and physical impairments that substantially limits one or more of his major life activities. See 29 U.S.C. § 705(20)(B).

69. At all times relevant to this action Defendants were recipients of federal funding within the meaning of the Rehabilitation Act.

70. Through their acts and omissions described herein, Defendants have violated the Rehabilitation Act by excluding Plaintiff from participation in, by denying him the benefits of, and subjecting him to discrimination in the benefits and services Defendants provide to the general public

71. Pursuant to the remedies, procedure, Plaintiff prays for judgment as set forth below.

**FIFTH CLAIM**

**MUNICIPAL LIABILITY UNDER THE
UNITED STATES CONSTITUTION AND 42 U.S.C. §1983**

80.  Plaintiff incorporates by reference each and every allegation contained in the foregoing paragraphs.

81.  The Defendant City of New York, Commissioner Bratton, Officer De La Rosa, Officer Benitez, Officer Brito, Officer John Does and Sally Roes, have recklessly and with deliberate indifference failed to provide adequate training and standards and policies and practices for its police officers where, in the context of interaction with mentally ill/emotionally disturbed individuals officer are not trained in how to interact with such individuals, and when they are

trained, and do not interact according to such standards, their behavior is not corrected, they can continue to discriminate against such individuals without fear of reprisal.

82.  The need for more or different training of officers is so obvious and the inadequacy so likely to result in the violation of constitutional rights, that the municipal policy makers  have been deliberately indifferent to the need.  Policymakers know to a moral certainty that NYPD Officers will confront a situation similar to Mr. Flores', namely, interacting with an EDP/mentally ill person; second, the situation is amenable to training and supervision (as has been proven by the use of Crisis Intervention Teams in many Police Departments) and there is a history of employees mishandling the situation; and third, where the wrong or difficult choice by an ill-trained employee will frequently cause the deprivation of a citizen's constitutional or statutory rights.

83.  Furthermore, the City of New York, has in its New York Police Department Patrol Guide the Unconstitutional Policy 216-05, which permits the arrest of any and all mentally ill and emotional disturbed individuals, even those who are not a harm to themselves or others.  It is unconstitutional, not only, in its application, but on its very face.  In fact,  Policy 216-05 states, "If the EDP is unarmed, not violent, and willing to leave voluntarily, a uniformed member of the service may take such person into custody. "  There is no logical, ethical, or legal justification for why Policy 216-05 allows such a broad stroke of Police authority, even more importantly, how

such a discriminatory policy against a specific group of disabled persons is permitted and unquestioned.

84. Furthermore, Policy 216-05 requires a host of practices and policies each of which is discriminatory, each of which not only do not permit reasonable accommodations for the EDP, but escalate the risk of harm to the EDP.   An example is the deployment of an Emergency Service Unit (ESU).

85. Finally,  The City of New York, has a custom or policy or practice, of rather than de-escalating situations where there are mentally disabled persons involved, arresting the mentally disabled person, even where there is no other wrong doing, and then charging the person with resisting arrest and disorderly conduct, to justify and the use of excessive force.

86. Defendants did not reasonably accommodate Plaintiff, as they could have, in a myriad of ways. Arguably, NYPD officers used the worst tactics possible, and escalated the situation by sending out even more armed officers who were not trained to interact with Plaintiff and disabled people like Plaintiff.

87. Plaintiff has no adequate remedy at law and will suffer serious and irreparable harm to his constitutional rights unless Defendants are enjoined from continuing NYPD's policy, practice, and/or custom of unconstitutional and discriminatory treatment of the mentally ill and the

policies and/or customs that have directly and proximately caused such constitutional and discriminatory abuses.

88.  The above acts and omissions, while carried out under color of law, have no justification or excuse in law, and instead constitute a gross abuse of governmental authority and power, shock the conscience, are fundamentally unfair, arbitrary and oppressive, and unrelated to any activity in which governmental officers may appropriately and legally undertake in the course of protecting persons or property, or ensuring civil order. The above acts and omissions were consciously chosen from among various alternatives.

89.  As a direct and proximate result of the aforesaid acts, omissions, customs, practices, policies and decisions of the aforementioned defendants, Plaintiff was injured in his health and person. He suffered and will continue to suffer great mental and physical pain, suffering, anguish, fright, nervousness, anxiety, shock, humiliation, indignity, embarrassment, harm to reputation, and apprehension, which have caused Plaintiff to sustain damages in a sum to be determined at trial.

90.  The above mentioned individually named and Doe defendants, acted under color of law, and both separately and in concert. The aforementioned acts of those defendants, and each of them, were willful, wanton, malicious and oppressive, with reckless disregard or with deliberate indifference and with the intent to deprive Plaintiff of his constitutional rights and privileges, and did in fact violate the aforementioned rights and privileges, entitling Plaintiff to exemplary and punitive damages in an amount to be proven at the trial of this matter.

22

WHEREFORE, plaintiff prays the following relief jointly and severally against all of the defendants:

a.  Compensatory damages;

b.  Punitive damages;

c.  Relief, including but not limited to, declaring 216-05 as unconstitutional and discriminatory, either as a policy, or as it is applied as a practice/custom, and injunctive relief enjoining City from Policy 216-05, and requiring the City to institute and implement improved policies like the use of specially trained Crisis Intervention Teams in dealings with mentally ill/EDPs.

d.  The convening and empaneling of a jury to consider the merits of the claims herein;

e.  Costs and interest and attorney's fees;

f.   Such other and further relief as this court may deem appropriate and equitable.

Dated:      New York, New York
               October 28, 2016

                             /s/Jenny Poupa Marashi, Esq.
                            JENNY POUPA MARASHI, Esq.
                            7 East 14th St., #820
                            New York, NY 10003
                            P (917) 703-1742
                            F (718) 585-3400
                            marashi7@yahoo.com

                            Attorney for Plaintiff